IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GINA JOHNSON MILLER,    )
             )
      **Plaintiff,**  )
             )  **CIVIL ACTION**
**v.**            )
             )  **No. 16-4032-JWL**
NANCY A. BERRYHILL,[1]   )
Acting Commissioner of Social Security, )
             )
      **Defendant.**  )
_____ )

MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

I.  **Background**

_____

[1]On Jan. 20, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for DIB, ultimately alleging disability beginning December 27, 2010.  (R. 92, 119).  Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  She argues that the ALJ erred in considering the opinions of two health care providers who treated her and in evaluating the credibility of her allegations of symptoms.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520[2]; <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). <u>Williams</u>, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. <u>Id.</u>

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors

---

[2]The ALJ's decision in this case was issued August 29, 2014. (R. 104). Therefore, the regulation citations in this opinion are to the regulations in effect at the time of that decision, 20 C.F.R., Part 404 (2014), unless otherwise indicated.

of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court addresses the alleged errors in the order presented by Plaintiff in her Brief, and finds no error in the Commissioner's final decision.

## II.    Dr. Hodgson's Treating Source Opinion

Plaintiff acknowledges that the ALJ discounted Dr. Hodgson's treating source medical opinion because it was inconsistent with Plaintiff's overall moderate level of medical treatment; inconsistent with the minimal treatment she received for degeneration in her spine, shoulder, and hip (hereinafter musculoskeletal impairments); and inconsistent with her numerous daily activities.  But, she argues that in light of the fact that an ALJ ordinarily gives deference to a treating source opinion, other factors should have lead the ALJ to accord controlling weight to the opinion.  She points out that an ALJ has a duty to fully and fairly develop the record, and argues that when the ALJ determined that Plaintiff had moderate or minimal treatment, she erred because she

"failed to consider the possibility that further treatment was not available for Ms. Miller." (Pl. Br. 20).

The Commissioner argues that the ALJ reasonably evaluated the opinion evidence, including the opinions of consultative examiners and state agency physicians and psychologists, and reasonably discounted the treating source opinion of Dr. Hodgson, finding the opinions of the medical healthcare providers who did not treat Plaintiff should be accorded greater weight. (Comm'r Br. 9). She points out that Plaintiff did not argue that the ALJ's reasons for discounting Dr. Hodgson's opinion were based on improper factors, but that other evidence which the ALJ did not rely on supports Dr. Hodgson's opinion. Id. at 10. She argues that this is essentially a request for the court to reweigh the evidence. Id. She argues that contrary to Plaintiff's arguments, the evidence supports the ALJ's decision.

### A.      Standard for Evaluating a Treating Source Opinion

A treating physician's opinion about the nature and severity of a claimant's impairments should be given controlling weight by the Commissioner if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. § 404.1527(c)(2).

The Watkins court explained the nature of the inquiry regarding a treating source's medical opinion. Id, 350 F.3d at 1300-01 (citing Soc. Sec. Ruling (SSR) 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable

5

clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

SSR 96-2p, cited by the court in Watkins, explains that "substantial evidence" as used in determining whether a treating source opinion is worthy of "controlling weight" is given the same meaning as determined by the Court in Perales, 402 U.S. at 401. SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2016). As the Ruling explains, evidence is "substantial evidence" precluding the award of "controlling weight," if it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion."

When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight she assigned the treating physician's opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Watkins, 350 F.3d at 1300. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in

the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).  However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

After considering the regulatory factors, the ALJ must give good reasons in her decision for the weight she ultimately assigns the opinion.  If the ALJ rejects the opinion completely, she must give specific, legitimate reasons for doing so.  Watkins, 350 F.3d at 1301.

## B.    Analysis

Since the court is precluded from reweighing the evidence and deciding what is the "correct" weight to accord a medical opinion, it must begin its review with the decision of the Commissioner.  Here, as Plaintiff acknowledges, the ALJ accorded minimal weight to Dr. Hodgson's opinion because of the "overall moderate level of treatment [Plaintiff] has required."  (R. 101).  The ALJ recognized that Plaintiff "required fairly extensive treatment for her diverticulitis" from August 2012 until her bowel resection surgery in December 2012, but minimal treatment thereafter.  Id.  The ALJ also accorded minimal

weight to the opinion because it is "inconsistent with the fact that [Plaintiff] has required minimal treatment for the degeneration in her spine, shoulder, and hip, which further shows that she is not significantly limited by her impairments." (R. 101-02). Finally, she discounted Dr. Hodgson's opinion because it is "inconsistent with the fact that she is able to engage in numerous activities of daily living." Id. at 102. The ALJ also considered the medical opinion that the state agency medical consultant, Dr. Toubes-Klingler, provided at the reconsideration level and accorded it great weight because it was consistent with the fact of minimum treatment for Plaintiff's musculoskeletal impairments; consistent with improvement in diverticulitis after surgery; consistent with physical examinations in the record indicating only moderate abnormalities; and consistent with Plaintiff's ability to engage in numerous activities of daily living. Id. at 101.

Plaintiff is correct that the ALJ did not find that Dr. Hodgson's opinion was not "based upon" medically acceptable clinical and laboratory diagnostic techniques. (Pl. Br. 19). But, the inquiry regarding controlling weight is whether the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques, not whether it is "based upon" such evidence. And, that is only half of the inquiry. Watkins, 350 F.3d at 1300. Here, as noted above, the ALJ recognized that Dr. Hodgson's opinion is inconsistent with Dr. Toubes-Klingler's opinion ("[t]he state agency medical consultant"). (R. 101-02). And, Dr. Toubes-Klinger's opinion is such evidence as a reasonable mind might accept as adequate to support a conclusion that is contrary to Dr. Hodgson's opinion. Consequently, the ALJ properly did not accord controlling weight to

Dr. Hodgson's opinion. Moreover, while it may be that the ALJ accepted Dr. Hodgson's opinion as <u>based on</u> appropriate medical evidence, the fact that she discounted the opinion as inconsistent with the record evidence indicates she determined that the opinion went too far and found greater limitations than that evidence would <u>support</u>.

Plaintiff's argument that the ALJ failed to identify evidence contradicting Dr. Hodgson's opinion is belied by her admission that the ALJ relied on Dr. Toubes-Klingler's opinion. (Pl. Br. 19). And, her argument that the opinion of "an agency physician who has never seen the claimant is entitled to the least weight of all," <u>id.</u> (quoting <u>Robinson</u>, 366 F.3d at 1084), fails to acknowledge the <u>Robinson's</u> court's specific statement that it is only the <u>general</u> rule. As the court in <u>Robinson</u> stated, "The opinion of an examining physician is <u>generally</u> entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." 366 F.3d at 1084 (citing 20 C.F.R. § 404.1527(d)(1), (2) (now codified at 20 C.F.R. § 404.1527(c)(1), (2)); and finding error because the ALJ rejected a treating physician's opinion in favor of the opinion of a non-examining state agency consultant "absent a legally sufficient explanation for doing so"). Moreover, the Social Security regulation to which the <u>Robinson</u> court cited makes clear that the rules expressed therein are the <u>general</u> rule, and are based upon consideration of the regulatory factors for evaluating medical opinions when a treating source opinion is not given controlling weight. 20 C.F.R. § 404.1527(c). The controlling issue in this case is not that Dr. Hodgson is a treating source and Dr. Toubes-Klingler is a non-examining

source.  It is whether the ALJ's reasons for preferring Dr. Toubes-Klingler's non-examining source opinion are legally sufficient.

Plaintiff argues they are not because Dr. Hodgson's opinion is well supported, because Dr. Toubes-Klingler is not a specialist in the relevant area of medicine, and because Dr. Toubes-Klingler "reviewed a markedly incomplete record."  (Pl. Br. 20).  As noted above, the ALJ found Dr. Hodgson's opinion was not well-supported and Plaintiff has not demonstrated otherwise.  Plaintiff does not suggest what is the "relevant area of medicine" to be considered in this case, but she asserts that Dr. Toubes-Klingler is an infectious disease specialist, and thereby implies that is not the relevant area of medicine. Id. n.37 (citing www.ama-assn.org).  Plaintiff's citation provides no information regarding Dr. Toubes-Klingler, and the court did a search on the web-site cited which revealed "no results."  Moreover, the court's review is limited to the record before the Commissioner and other relevant evidence of which the Commissioner might properly take administrative notice, and Plaintiff cites no evidence in the record regarding Dr. Toubes-Klingler's speciality, if any.  Furthermore, as the Commissioner argues, Dr. Toubes-Klingler is a program physician, and as such is an expert in Social Security disability evaluation.  20 C.F.R. § 404.1527(e)(2)(i).

Plaintiff implies that the reason the record which Dr. Toubes-Klingler reviewed is "markedly incomplete" is because it included medical records only through March 2013 which was about a year-and-a-half before the ALJ made her decision, and because the record Dr. Toubes-Klingler reviewed did not include the opinions of Dr. Hodgson and Dr.

10

Portenier.  (Pl. Br. 20).  As is her duty, the ALJ considered the opinions of Dr. Hodgson and Dr. Portenier, discounted them, and provided her reasons for doing so.  An ALJ is not required to have an agency medical source consider another medical source's opinion before she may evaluate it.  Plaintiff has not demonstrated error in the ALJ's reasons for discounting the opinions, and she has not demonstrated that the opinions would have required Dr. Toubes-Klingler to change her opinion.  Moreover, she has not demonstrated that the evidence received into the record after Dr. Toubes-Klingler's review shows a material change in Plaintiff's condition or is materially different than the evidence available at Dr. Toubes-Klingler's review, thereby negating the physician's opinion or precluding the ALJ's findings.  The burden is on Plaintiff to show error in the ALJ's decision, and when she merely suggests that there is error in the decision, she is in effect asking the court to reweigh the decision, a course which it may not take.  Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.

Plaintiff argues that the ALJ erred in discounting Dr. Hodgson's opinion--for the reasons that Plaintiff required only moderate treatment overall and minimal treatment for her musculoskeletal impairments--because the ALJ did not "consider the possibility that further treatment was not available for Ms. Miller" and thereby failed her duty to fully and fairly develop the record as to material issues.  (Pl. Br. 20-21) (citing Baca v. Dep't of HHS, 5 F.3d 476, 479-80 (10th Cir. 1993); Maes v. Astrue, 522 F.3d 1093, 1097-98 (10th Cir. 2008); and Castano v. Astrue, 650 S. Supp. 2d 270, 280 (E.D.N.Y. 2009)).  She argues that she clarified the issue in a letter she wrote to the Appeals Council in which

11

she asserted that the ALJ did not ask her why she did not get additional treatment, but that

"care with a specialist was too expensive for her and she had already [sic] extensive credit

card debt." (Pl. Br. 21) (citing R. 371-73). She argues that her letter is new, material,

chronologically relevant evidence which should be considered by this court to find that

she was unable to afford additional treatment, and the ALJ erred by using that fact against

her to discount Dr. Hodgson's opinion. Id. at 22 (citing SSR 82-59, 1982 WL 31384 at

*4). The Commissioner argues that the records do not demonstrate a refusal or denial of

treatment due to inability to pay, that Plaintiff was represented at the disability hearing,

that counsel never suggested a need to further develop the record or that Plaintiff was

unable to afford additional needed treatment, and that the ALJ was entitled to rely on

counsel to structure the case. (Comm'r Br. 12-13, n.4).

Plaintiff's argument fails on several levels. First, as noted above, the ALJ

discounted Dr. Hodgson's opinion in part because it was inconsistent with the moderate

level of treatment required overall--when considering Plaintiff's surgery for diverticulitis-

-and the minimal level of treatment required for Plaintiff's musculoskeletal impairments.

(R. 101-02). The ALJ did not discount Dr. Hodgson's opinion because Plaintiff's

treatment "did not involve greater involvement of specialists or surgery other than for

diverticulitis," as Plaintiff characterizes the finding. (Pl. Br. 20). While more

involvement of specialists or surgery might constitute more than the minimal level of

treatment the ALJ found, the lack of specialist treatment or additional surgery is not what

the ALJ relied upon to discount Dr. Hodgson's opinion. Further, neither Dr. Hodgson's

12

treatment records nor his opinion statement suggest that additional treatment of any sort was necessary or desired and there is no indication in Dr. Hodgson's treatment records or his opinion statement that treatment was limited due to the inability to afford additional treatment.

Next, the Commissioner is correct that the ALJ in this case is entitled to rely on Plaintiff's counsel at the hearing to structure and present her claims so that they are adequately explored and to identify any issues requiring further development. He did not. As Plaintiff suggests, a Social Security disability hearing is nonadversarial and it is the ALJ's duty to fully and fairly develop the record in such cases even when the claimant is represented by counsel. Baca, 5 F.3d at 479-80. "The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to h[er] decision and learns the claimant's own version of those facts." Henrie v. U.S. Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993) (citations, quotations, and brackets omitted). The court in Maes--cited by Plaintiff--recognized that an ALJ may ordinarily rely on counsel:

> Nonetheless, in cases such as this one where the claimant was represented by counsel, "'the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present [the] claimant's case in a way that the claimant's claims are adequately explored,' and the ALJ 'may ordinarily require counsel to identify the issue or issues requiring further development.'" [Branum v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004)] (quoting Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir.1997)).

522 F.3d at 1096. This is just such a case. There was simply no evidence before the ALJ that Plaintiff was unable to afford necessary additional treatment. There was evidence that Plaintiff regularly received medical care and chiropractic care. She had received

13

specialist care for her diverticulitis and had received surgery to correct that issue, and there was no indication that her ability to pay was an issue. Based on this record, if Plaintiff was unable to afford needed treatment, the only way for the ALJ to know was for Plaintiff or counsel to tell her. Plaintiff points to no record evidence which would suggest that the ALJ needed to further explore the issue of Plaintiff's ability to pay. Hawkins, 113 F.3d at 1167 ("Ordinarily, the claimant must in some fashion raise the issue sought to be developed which, on its face, must be substantial.") (citations omitted).

Finally, Plaintiff's letter, presented after-the-fact to the Appeals Council, does not change the result. As Plaintiff's Brief suggests, SSR 82-59, Titles II and XVI: Failure to Follow Prescribed Treatment, provides that inability to afford prescribed treatment is a "Justifiable Cause for Failure to Follow Prescribed Treatment." 1982 WL 31384 at *4 (Jan. 1, 1982). But, there is no evidence in the record, including in Plaintiff's letter, that Plaintiff was prescribed any treatment beyond that upon which the ALJ relied in finding a moderate level of treatment overall and a minimal level of treatment for musculoskeletal impairments. And, even Plaintiff's letter does not show that she was unable to afford treatment during the period at issue. Rather, Plaintiff's letter asserts that such treatment is expensive, but that she is "now seeing the specialists I need." (R.371). The inference to be drawn from this is that even if it were necessary to seek additional care during the period at issue in the ALJ's decision, Plaintiff could have, but chose not to do so. Moreover, Plaintiff's letter is at best confusing. The Court Transcript Index states that Plaintiff's letter, Exhibit 17E, is "dated 12/10/2015." (Doc. 9, Attach. 2, Index3). But,

14

the letter is not dated anywhere on its face.  (R. 371-73).  In her letter Plaintiff includes

her "specialist care calendar for October, November, and December of 2013."  Id. at 371.

The disability hearing in this case was held on July 17, 2014 (R. 92, 114) and the decision

is dated August 29, 2014.  (R. 104).  Therefore, all of the specialist care to which plaintiff

cites apparently occurred before the decision in this case.  And Plaintiff submitted many

medical records to the Appeals Council, which issued its "Notice of Appeals Council

Action" on January 29, 2016.  Id. at 1, But the court is unable to identify any records

relating to the specialist care calendar for October, November, and December of 2013 in

either the administrative record in this case or in the medical records subsequently

submitted to the Appeals Council.  If Plaintiff's letter was sent to the Appeals Council in

December 2015, it is possible that the "specialist care calendar" which it contains was

actually for 2014, or even 2015, but the court will not speculate.  Either case would not

affect the inference to be drawn from Plaintiff's letter–that she could have afforded

additional treatment during the period at issue but that it was not prescribed or she chose

not to do so.

Finally, Plaintiff takes issue with the ALJ's reliance on Plaintiff's activities of

daily living.  She acknowledges that such activities included a period of work which

occurred after her alleged onset date but ended in May 2011.  She argues that although

that work might affect her claim through May 2011, the ALJ must consider disability

after that date, and "the ability to perform some basic daily activities such as caring for

one self and household tasks is not an indication that a claimant can perform work

activities 8 hours a day, 40 hours a week." (Pl. Br. 22).

As Plaintiff suggests, the ALJ discounted Dr. Hodgson's opinion because it was

inconsistent with Plaintiff's ability to perform "numerous activities of daily living." (R.

102). Here is the ALJ's discussion relevant to Plaintiff's activities of daily living.

> The record shows that the claimant is able to engage in numerous activities
> of daily living. She can cook simple meals and clean. She is able to care
> for her personal hygiene. She is able to ride in a car. She can go shopping.
> She continues to teach some piano lessons (Exhibit 5E). Overall, the
> claimant's descriptions of her daily activities are essentially normal. Her
> activities are not limited to the extent one would expect, given the
> complaints of disabling symptoms and limitation that preclude her from
> work activities. Although the claimant may not be able to engage in all of
> the activities that she did in the past and it may take her longer to perform
> the tasks, she is more active than would be expected if all of her allegations
> were credible.
>
> As mentioned earlier, the record reflects work activity after the alleged
> onset date. This work indicates that the claimant's daily activities have, at
> least at times, been somewhat greater than the claimant has generally
> reported.

(R. 100-01). The "work activity after the alleged onset date," refers to the ALJ's finding

that Plaintiff engaged in substantial gainful activity between December 2010 and May

2011, when she was laid off. (R. 94).

As the ALJ noted, Plaintiff's work in 2010 and 2011 indicates Plaintiff's daily

activities after her alleged onset date have at times been greater that she has reported.

But, as the ALJ also noted Plaintiff continued to give piano lessens even up to the date of

the hearing. Moreover, she found that Plaintiff's description of her daily activities is

"essentially normal."  The ALJ did not err in finding Plaintiff's daily activities

inconsistent with Dr. Hodgson's opinion.  Plaintiff has not shown that the ALJ erred in

discounting that opinion.

### III.    Dr. Portenier's Opinion

Plaintiff asserts that the ALJ discounted Dr. Portenier's opinion for the same

reasons that she discounted Dr. Hodgson's opinion--and because Dr. Portenier, as a

chiropractor, is not an acceptable medical source.  Plaintiff's assertion is generally

correct, but she ignores that the ALJ also found that Dr. Portenier's opinion is "not

supported by his own lengthy treatment notes."  (R. 102).  As discussed above, the ALJ's

reasons for discounting Dr. Hodgson's opinion are supported by the record evidence and

are sufficient, legitimate reasons to discount the opinion.  Those reasons also support

discounting Dr. Portenier's opinion.  Plaintiff does not even argue that Dr. Portenier's

opinion is consistent with his treatment notes.  Plaintiff does not argue that Dr. Portenier

is an acceptable medical source, but she argues that the ALJ should have considered his

opinion in accordance with the regulatory factors as suggested in SSR 06-3p.  (Pl. Br. 24).

However, the ALJ specifically stated that he had "considered opinion evidence in

accordance with the requirements of . . . SSR . . . 06-3p."  (R. 96).  And, the court's

general practice is to take a lower tribunal at its word when it declares that it has

considered a matter.  United States v. Kelley, 359 F.3d 1302, 1304-05 (10th Cir. 2004).

Moreover, in considering the support of Dr. Portenier's treatment notes for his opinion

and the consistency of the opinion with other evidence, the ALJ demonstrated that she

considered the regulatory factors.  Plaintiff has shown no error in the evaluation of Dr. Portenier's opinion.

## IV.   Credibility

Plaintiff claims that the ALJ's credibility determination is not supported by substantial evidence.  (Pl. Br. 26).  She argues that, as she discussed in her opinions arguments, the ALJ erred in finding that her course of treatment and activities are inconsistent with disability, and also that she erred in finding that Plaintiff's clinical examinations are inconsistent with her allegations, that her use of a cane is inconsistent with x-ray evidence, and that "the record expressly contradicts the ALJ's finding that Ms. Miller has not had any abdominal pain since she had intestinal surgery."  (Pl. Br. 26-27).  The Commissioner argues that the ALJ provided reasons, linked to record evidence, for discounting Plaintiff's allegations of disabling symptoms, that Plaintiff's allegations of error are not supported by the record, and the finding of only partial credibility is reasonable and should be affirmed.

### A.   Standard for Evaluating Credibility

The court's review of an ALJ's credibility determination is deferential.  Credibility determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173.

**B.    The ALJ's Credibility Determination**

In what Plaintiff characterizes as "boilerplate language that appears in nearly every ALJ decision denying benefits" (Pl. Br. 25), the ALJ stated her credibility finding:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(R. 97).

The ALJ discussed the evidence relating to Plaintiff's musculoskeletal impairments. Id. 97-99. As relevant to the credibility of Plaintiff's allegations of symptoms, she noted that Plaintiff had only a moderate level of treatment for these impairments, she had only limited examinations by treatment providers other than her chiropractor, that Plaintiff alleged she needs a cane to ambulate "but this level of deficit is clearly not consistent with the mild degeneration shown on the x-rays," she has had no

surgery related to these impairments, and has not been prescribed narcotic pain medication.  Id. at 98.  She also discussed evidence relating to Plaintiff's treatment for diverticulitis, and as it relates to credibility noted that one month after her bowel resection surgery, Plaintiff was told to return only as needed, and she has not returned.  Id. at 99. She noted that Plaintiff "has not reported to her primary care provider frequent episodes of abdominal pain."  Id.  She noted only a moderate level of treatment for her mental health impairments, consisting of only medications, and that Dr. Hodgson "did not note . . . any deficits in her mental health functioning."  Finally, the ALJ discussed Plaintiff's "numerous activities of daily living" (R. 100) as quoted supra at 16.

### C.    Analysis

Clearly, Plaintiff disagrees with the ALJ's credibility determination.  But, she has not demonstrated error in it.  To the extent that she claims error because of the ALJ's use of boilerplate language in her credibility finding, the real question is whether the ALJ applied the correct legal standard in her evaluation and whether the evidence supports her finding.  The answer to both questions is yes.  As discussed above, the ALJ did not err in her evaluation of Plaintiff's course of treatment or activities of daily living, and the court will not repeat its analysis.  The ALJ is required to consider objective medical evidence, and she did not rely solely on that evidence to discount Plaintiff's allegations.

Nor did the ALJ substitute her lay judgment of x-rays for the medical opinion of Dr. Portenier.  Dr. Portenier prescribed a cane "Due to continued problems with ambulation."  (R. 1459).  Beyond that, he provided no basis or explanation for his finding

20

of "medical necessity to prescribe a cane."  Id.  The ALJ did not address Dr. Portenier's

prescription at this point, but in discounting Dr. Portenier's opinion, he found that Dr.

Portenier's "most recent notes do not mention any difficulty with ambulation."  (R. 102)

(citing Ex. 33F (R. 1472-1481)).  Even in her argument that the ALJ erred in discounting

Dr. Portenier's opinion Plaintiff did not suggest error in this finding.  Here, the ALJ did

not substitute her lay opinion for Dr. Portenier's opinion, rather, she weighed Dr.

Portenier's opinion properly in accordance with her duty as the adjudicator and explained

her reasons for discounting the opinion.  Although an ALJ is not an acceptable medical

source qualified to render a medical opinion, "the ALJ, not a physician, is charged with

determining a claimant's RFC from the medical record."  Howard v. Barnhart, 379 F.3d

945, 949 (10th Cir. 2004).  "And the ALJ's RFC assessment is an administrative, rather

than a medical determination."  McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir.

2012) (citing Social Security Ruling (SSR) 96-05p, 1996 WL 374183, at *5 (July 1996)).

Finally, it should be noted that the ALJ's reference to the x-rays at issue was in the

context of explaining that mild degenerative changes in the right hip are not consistent

with Plaintiff's claim that she must use a cane to ambulate and that explanation had no

direct relation to Dr. Portenier's prescription of a cane.  (R. 98).

 Plaintiff's argument that "the record expressly contradicts the ALJ's finding that

Ms. Miller has not had any abdominal pain since she had intestinal surgery" (Pl. Br. 27),

misunderstands both Plaintiff's testimony and the ALJ's decision.  The ALJ did not find

that Plaintiff has had no abdominal pain since her surgery.  At the hearing Plaintiff

testified that she continues to have flare ups of her diverticulitis symptoms after her surgery, that they have been getting worse, that she has a flare on average once every three weeks, that they last two to three days, and that during the flares "it is just gut-wrenching pain so bad that I, I lay [sic] on the floor and cry." (R. 128). It was in this context that the ALJ noted Plaintiff "has not sought emergency room treatment for abdominal pain on a frequent basis after her surgical procedure. She has not reported to her primary care provider frequent episodes of abdominal pain." (R. 99). While the record is clear that Plaintiff has reported abdominal pain since her surgery, it is equally clear she has not reported <u>frequent</u> episodes of pain, certainly not of the nature that existed prior to surgery, and as the ALJ also noted she has never returned to Dr. Saville. Giving the ALJ's opinion due deference, Plaintiff has not shown error in the credibility determination

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 14th day of July 2017, at Kansas City, Kansas.


s:/ John W. Lungstrum_____
**John W. Lungstrum**
**United States District Judge**